UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
MAY 18 2017
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA | § Criminal No.: |
| | § **SA17CR434 DAE** |
| | § **INFORMATION** |
| v. | § |
| | § COUNT ONE: 18 U.S.C. § 371 – |
| | § Conspiracy to Commit Bribery |
| | § COUNT TWO: 26 U.S.C. § 7203 – Failure |
| | § to File Tax Returns |
| JIMMY GALINDO | § |

THE UNITED STATES ATTORNEY CHARGES:

## COUNT ONE
### [18 U.S.C. §§ 371 & 666(a)(1)(B)]

At all times material to this Information:

**A. PERSONS AND ENTITIES**

1. Reeves County is a county in Texas and includes the town of Pecos. Reeves County is governed by the Reeves County Commissioners Court, which is comprised of the Reeves County Judge and four County Commissioners. Reeves County is in the Western District of Texas.

2. The Defendant, JIMMY GALINDO ("GALINDO"), was the County Judge for Reeves County from on or about January 1, 1995 until on or about December 31, 2006. As County Judge, GALINDO was the presiding officer of the Reeves County Commissioners Court.

3. Co-conspirator VERNON C. FARTHING III ("FARTHING") was the president of a company specializing in providing medical services to inmates ("FARTHING's COMPANY").

1

4.     Co-conspirator CARLOS I. URESTI ("URESTI") is the Texas State Senator for Senate District 19, which included Reeves County. URESTI was elected to this position on or about November 7, 2006.

**B.    REEVES COUNTY AWARDS CONTRACT TO FARTHING's COMPANY**

5.     On or about August 10, 2005, FARTHING, on behalf of FARTHING's COMPANY, submitted a proposal (the "Proposal") to provide medical services to the Reeves County Detention Center R-3 (the "Facility"). FARTHING submitted the Proposal contingent upon Reeves County being awarded a contract by the Federal Bureau of Prisons to house Federal inmates at the Facility.

6.     On or about May 24, 2006, the Federal Bureau of Prisons awarded Reeves County a contract to house federal inmates at the Reeves County Detention Center R-3 (the "Facility").

7.     On or about September 13, 2006, Reeves County awarded FARTHING's COMPANY a contract to provide medical and related services at the Facility (the "R-3 Contract"). FARTHING signed the Contract on behalf of FARTHING's COMPANY. GALINDO signed the Contract on behalf of Reeves County in his official capacity as Reeves County Judge.

8.     The Contract called for Reeves County to pay FARTHING's COMPANY a set rate per inmate per day for healthcare.

9.     At all times material to this Information, Reeves County, Texas was a local government that received Federal funding in excess of $10,000 per year.

## THE CONSPIRACY

10.    That from on or about January 1, 2006, and continuing through on or about September 30, 2016, in the Western District of Texas and elsewhere, the Defendant,

2

### JIMMY GALINDO,

knowingly, intentionally, and unlawfully combined, conspired, confederated, and agreed together with FARTHING, URESTI, and others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to corruptly solicit, demand, accept, and agree to accept a thing of value involving $5,000 or more intending to be influenced or rewarded in connection with a transaction and series of transactions of Reeves County, Texas, a local government entity which received more than $10,000 a year in Federal funding, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## OBJECT OF THE CONSPIRACY

11. The object of the conspiracy was for GALINDO to conspire with FARTHING and URESTI to use GALINDO's official position as Reeves County Judge to enrich themselves by GALINDO soliciting and accepting payments and other things of value from FARTHING's COMPANY and its successor companies in exchange for favorable official action and to hide and cover-up this conspiracy from the taxpayers, citizens, and county commissioners of Reeves County.

## MANNER AND MEANS

12. The conspiracy was carried out through the following manner and means, among others:

    a. While the REEVES County Judge, GALINDO accepted payments, promises of future payments, and other things of value from FARTHING, through FARTHING's COMPANY.

    b. In exchange for the payments and promises of future payments from FARTHING

3

and FARTHING's COMPANY, GALINDO, acting in his official capacity as Reeves County Judge, helped FARTHING's COMPANY negotiate, price, and secure the R-3 Contract from Reeves County on terms favorable to FARTHING's COMPANY and FARTHING.

    c.    In exchange for GALINDO's assistance in securing the R-3 Contract on terms favorable to FARTHING's COMPANY, FARTHING, through FARTHING's COMPANY, agreed to hire URESTI as a "consultant" and pay URESTI approximately $10,000 a month for "marketing".

    d.    URESTI acted as a conduit for the payments from FARTHING's COMPANY and FARTHING to GALINDO and paid approximately half of the money he received from FARTHING and FARTHING's COMPANY to GALINDO.

    e.    FARTHING and GALINDO used URESTI as a conduit for payments for the purpose of concealing the source, origin, nature, ownership, and control of the proceeds paid to GALINDO from FARTHING and FARTHING's COMPANY.

    f.    To further the scheme, URESTI used a company called Turning Point Strategies, LLC ("Turning Point") and the Uresti law firm's IOLTA and Operating accounts to pay GALINDO his share of the payments from FARTHING and FARTHING's COMPANY and to hide and cover-up this conspiracy from the taxpayers, citizens, and county commissioners of Reeves County, amongst others.

### OVERT ACTS

13.    In furtherance of the conspiracy and to effect and accomplish its objects, GALINDO, FARTHING, and URESTI committed, among others, the following overt acts in the Western District of Texas and elsewhere:

a. On or about August 7, 2006, GALINDO, URESTI, and FARTHING met in Reeves County, Texas to discuss the Contract and that FARTHING, through FARTHING's COMPANY, would pay URESTI as a "consultant".

b. On or about September 13, 2006, GALINDO, acting in his official capacity as Reeves County Judge, signed the Contract between FARTHING's COMPANY and the Reeves County Commissioners Court.

c. On or about September 13, 2006, FARTHING, in his capacity as President of FARTHING's COMPANY, signed the Contract between FARTHING's COMPANY and the Reeves County Commissioners Court.

d. On or about September 15, 2006, FARTHING sent a letter to URESTI agreeing to pay URESTI $10,000 a month for "marketing services."

e. On or about September 20, 2006, FARTHING sent and caused to be sent a check to URESTI for $10,000 as the initial payment to URESTI and GALINDO. Check number 19782 was drawn upon FARTHING's COMPANY bank account and was made payable to URESTI.

f. On or about January 4, 2007, URESTI formed Turning Point which was used, among other means, to pay GALINDO his share of the payments from FARTHING and FARTHING's COMPANY.

g. From on or about September 20, 2006, until on or about September 30, 2016, FARTHING's COMPANY, and its successor companies, paid URESTI monies pursuant to the agreement between URESTI, FARTHING and GALINDO.

h. From on or about January 1, 2007, until on or about September 30, 2016, URESTI paid GALINDO approximately one-half of the payments from FARTHING's COMPANY and

5

its successor companies. URESTI paid some of those payments to GALINDO using Turning Point. From some of those payments, URESTI deducted between approximately $250 and $500 for "office rent" despite the fact that GALINDO never rented an office from URESTI and URESTI refused to allow GALINDO to have office space at URESTI's office.

All in violation of Title 18, United States Code, Sections 371 and 666(a)(1)(B).

## COUNT TWO
## [26 U.S.C. § 7203]

During calendar year 2013, the Defendant,

## JIMMY GALINDO,

who was a resident of Selma Texas, and his spouse had and received gross income totaling approximately $222,000. By reason of that gross income, he was required by law, following the close of the calendar year 2013 and on or before April 15, 2014, to make an income tax return to the Internal Revenue Service Center at Austin, Texas, to a person assigned to receive income tax returns at the local office of the Internal Revenue Service at San Antonio, Texas, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing the foregoing, on or about April 15, 2014, he did willfully fail to make an income tax return in the Western District of Texas and elsewhere.

All in violation of Title 26, United States Code, Section 7203.

Respectfully submitted,

RICHARD L. DURBIN, JR.
UNITED STATES ATTORNEY

By: __/s/ Joseph Blackwell__
JOSEPH BLACKWELL
Assistant U.S. Attorney